**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JASON E. FRAZIER, )<br>)<br>Defendant. )<br>_____ ) | CRIMINAL ACTION<br><br>No. 09-20152-01-KHV |

## MEMORANDUM AND ORDER

On November 18, 2009, the grand jury charged defendant with kidnaping in violation of 18 U.S.C. § 1201(a)(1) (Count 1); use of a firearm in furtherance of a crime of violence and a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 2); knowing and intentional possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) (Count 3); and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e) (Count 4).[1] See Indictment (Doc. #8) at 1-2. This matter comes before the Court on defendant's Motion To Suppress (Doc. #44) filed March 1, 2010. On April 7, 2010, the Court held an evidentiary hearing on the motion. For reasons stated below the Court overrules the motion.

### Factual Background[2]

Based on testimony, the government's proffer and exhibits received at the hearing, the Court finds the following facts:

---

[1] The indictment also includes a forfeiture allegation under 18 U.S.C. §924(d) and 28 U.S.C. § 2461(c).

[2] Defendant does not contest a substantial portion of the facts set forth in the government's response.

On October 29, 2009, between 3:00 and 4:00 a.m., Samuel Schwer and his daughter, Katrina Schwer, became lost while traveling from the American Royal in Kansas City, Missouri to the Marriott Hotel in downtown Kansas City, Missouri.[3] Mr. Schwer was driving a 2004 Dodge Ram truck while his daughter was driving a 2003 Ford Taurus car. The Schwers live in Wisconsin and were not familiar with the Kansas City area.

The Schwers pulled into a convenience store on Truman Road in Kansas City, Missouri. Mr. Schwer asked the clerk for directions to the Marriott Hotel but the clerk was unable to help. A customer, Jason Frazier, approached Mr. Schwer and said that for gas money he would lead them to the Marriott. After a short conversation the Schwers got into their vehicles and followed Frazier, who was driving a 1995 Acura Legend.[4] Frazier drove past the 12th Street exit in Kansas City, Missouri, which the Schwers believed was the correct exit to get to the Marriott. Concerned that Frazier was not leading them in the right direction, the Schwers took the Central Avenue exit into Kansas City, Kansas. Frazier also took the exit ahead of them. The Schwers then pulled to the side of the road and tried to make u-turns in the roadway. Frazier pulled in behind Katrina and approached her vehicle on foot, carrying a pistol. Frazier leaned into Katrina's open window, grabbed her by the shirt, pushed the gun barrel into her chest and yelled, "Get out of the car. Get out of the car." Mr. Schwer heard her screaming and saw Frazier with the upper half of his body inside the car window. Mr. Schwer backed his truck up at a high rate of speed and pushed Frazier

---

[3] According to its website, the American Royal is a livestock show which draws more than 250,000 visitors every year. American Royal Home Page, http://www.americanroyal.com.

[4] Frazier had recently purchased the Acura from Ibraham Alanqar in Lawrence, Kansas. Frazier retained Alanqar's license plate and did not register it in his own name.

up against Katrina's vehicle.[5] Mr. Schwer yelled "Go, Go, Go," and Katrina sped off, with her father following behind.

After driving on several side streets and believing that they had lost Frazier, the Schwers pulled into a Stop & Go at 701 Central Avenue in Kansas City, Kansas. Mr. Schwer was just about to go inside to call police when the black Acura sped toward them in the parking lot. Katrina quickly drove off westbound on Central Avenue with Frazier following her. Mr. Schwer realized that Katrina was the focus of Frazier's attention and gave chase in his truck. As the vehicles approached 12th and Central Avenue, Mr. Schwer saw Frazier's car pull alongside Katrina's car. Frazier pulled his vehicle next to Katrina's and yelled "Get in my car, Get in my car." Mr. Schwer pulled ahead of Frazier's vehicle in an effort to stop him.[6] Mr. Schwer backed his truck into the front end of Frazier's Acura,[7] where the truck became stuck momentarily. He then drove forward. As Mr. Schwer drove off, he saw in his rearview mirror that Frazier's vehicle was damaged and that he was no longer giving chase.

Mr. Schwer flagged down KCK Police Officer Clinton Swan and told him what had happened and described the car and driver. Based on Mr. Schwer's report, Officer Swan, Officer Michael Moulin and Officer Westbrook[8] responded and searched the area for a small dark colored vehicle with front end damage driven by a black male wearing a dark colored jacket. At Valley and Reynolds Streets, Officer Westbrook located Frazier and the Acura, which had substantial front end

---

[5] Frazier's black cap fell into Katrina's vehicle, and police later recovered it.

[6] Mr. Schwer knew that Frazier had a gun and feared for his daughter's safety.

[7] Katrina drove to the area of 29th and Parallel, where she called 911. The dispatcher sent KCK police officers to that location.

[8] The record does not indicate Officer Westbrook's first name.

-3-

damage. Frazier was wearing a dark colored jacket. Officer Westbrook handcuffed Frazier. While standing outside of the Acura, Officer Moulin saw a spent shell casing on the front passenger seat. Mr. Schwer arrived and identified Frazier as the individual involved in the incident. While officers were at the location with Frazier, the officers who had responded to assist Katrina provided information from her that was consistent with the information which Mr. Schwer had provided. The officers then arrested Frazier. Shortly after that, Katrina went to the scene and identified Frazier.

Officers determined that the Acura was a traffic hazard because it was parked somewhat in the roadway. Officer Moulin inventoried the vehicle before it was towed from the scene. He found a black bag in the trunk which contained a loaded 9 mm Ruger pistol, Model P89, serial number 313-6913; a box of Federal 9 mm luger 47 grain jacketed hollow point ammunition; a silver 20 round magazine containing 11 luger rounds; a black digital scale; a large freezer bag containing 261.2 grams of marijuana; a sandwich bag containing 3.6 grams of cocaine; a sandwich bag containing 22.8 grams of marijuana and a sandwich bag containing 22.6 grams of "crack" cocaine.

Moulin testified that when he searched the Acura, he followed the KCK police policy for inventory searches. See Gov't. Ex. 2. The tow policy required an officer to make an inventory list of valuable items and potential evidence. Moulin testified that he made an inventory list of items in the passenger compartment and trunk. Moulin did not list a three-ring binder, registration papers or a coin which he found in the car. See Tr. 28, 65. Moulin stated that he did not consider those items as valuable or as potential evidence. On cross-examination, Moulin agreed that the inventory policy did not specifically state that in conducting an inventory search, the officer should open and inventory containers such as the black bag. Moulin testified, however, that he believed that the

policy required him to look inside containers such as the black bag to determine whether they contained items of value.

## **Analysis**

Defendant argues that the Court should suppress evidence of the items in the black bag (the Ruger pistol, the ammunition, the scale and drugs) because Officer Moulin did not search the Acura in accordance with KCK police policy for an inventory search.[9] The government principally argues that at the time of the search, officers had probable cause to believe that the vehicle contained evidence of a crime and therefore the search was reasonable under the automobile exception. In the alternative, the government argues that the search was a valid inventory search based on standardized procedures.

Law enforcement officers ordinarily must obtain a warrant, based on probable cause, before conducting a search. See New York v. Belton, 453 U.S. 454, 457 (1981). The Supreme Court has recognized an "automobile exception" based on a vehicle's inherent mobility and the diminished expectation of privacy which surrounds the automobile. See Pennsylvania v. Labron, 518 U.S. 938, 940 (1996). If officers have probable cause to believe that a vehicle contains contraband, the Fourth Amendment permits them to search the vehicle. Id.; see Maryland v. Dyson, 527 U.S. 465, 466-67 (1999). Further, although the automobile exception is based in part on exigency, "the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period

---

[9] For purposes of this motion, defendant does not dispute the propriety of his arrest or the decision to conduct an inventory search or to tow his vehicle.

required for the police to obtain a warrant." See United States v. Beckstead, 500 F.3d 1154, 1165 (10th Cir. 2007). Probable cause to search a vehicle exists if, under the totality of the circumstances, a fair probability exists that the vehicle contains contraband or evidence. See United States v. Bradford, 423 F.3d 1149, 1160 (10th Cir. 2005). The court must evaluate probable cause "in relation to the circumstances as they would have appeared to a prudent, cautious and trained police officer." United States v. Lopez, 777 F2d. 543, 551 (10th Cir. 1985); see United States v. Davis, 197 F.3d 1048, 1051 (10th Cir. 1999) (probable cause measured against objective standard; subjective belief of individual officer not dispositive). The permissible scope of a search under the automobile exception is defined by the nature of the probable cause that justifies the search. "If probable cause to search a vehicle exists, the police may search the entire vehicle, including the trunk and all containers within the vehicle that might contain the object for which they are searching." United States v. Hanks, 821 F.Supp. 1425, 1430 (D. Kan. 1993) (citing United States v. Ross, 456 U.S. 798, 820-21 (1982)) (scope of warrantless search of automobile not defined by the nature of container in which the contraband is secreted; it is defined by object of search and places in which there is probable cause to believe that it may be found).

Here, the officers had probable cause to search the Acura based on all of the circumstances, including the following:

> (1) officers had just received two corroborating reports of an armed kidnaping involving a vehicle which matched the description of defendant's vehicle (including the damaged front end),
> (2) the reported kidnaping occurred in the immediate vicinity where officers found the Acura and defendant,
> (3) two witnesses identified defendant as the assailant and
> (4) an officer saw a spent shell casing in the front seat.

These facts are sufficient to establish probable cause to believe that defendant had committed a crime and that the vehicle contained evidence of the crime, including a firearm. Because officers

had probable cause to believe that the Acura contained evidence of a crime involving a firearm, they could search the entire vehicle (including the trunk) and all containers therein that might contain a firearm or related items. See Ross, 456 U.S. at 825.

In the alternative, the government also argues that the search was reasonable as an inventory search. An inventory search in a "a well-defined exception to the warrant requirement of the Fourth Amendment." United States v. Tueller, 349 F.3d 1235, 1238 (10th Cir. 2003). It is common practice for the police to conduct an inventory search of the contents of vehicles that they are about to impound. Id. Inventory searches serve three administrative purposes: the protection of the owner's property while it remains in police custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger. Id. An inventory search is only reasonable, however, if conducted according to standardized procedures. United States v. Haro-Salcedo, 107 F.3d 769, 772 (10th Cir. 1997).

The KCK police department has a written policy for inventory searches. It requires officers to inventory all valuable items as well as potential evidence found in a car before it is towed. See Gov't Ex. 2. Officer Moulin testified that pursuant to policy, he inventoried items of value in the passenger compartment and trunk. Defendant points out that Officer Moulin did not include on the inventory list several of the items which he found, including a three-ring binder, registration papers and a coin on the car seat. Officer Moulin testified, however, that he did not list the items because he did not believe that they were valuable or potential evidence. Defendant also points out that the policy did not specifically state that the officer should open and inventory containers such as the black bag. Officer Moulin testified, however, that because the policy required him to inventory all valuable items, it required him to look inside containers such as the black bag in order to see if they

contained items of value. The Court concludes that Officer Moulin conducted the inventory search of the Acura in good faith based upon standardized procedures. See United States v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004) (officer's testimony as to established routine for inventory searches relevant to show standard criteria). The search was therefore reasonable under the Fourth Amendment.

**IT IS THEREFORE ORDERED** that defendant's Motion To Suppress (Doc. #44) filed March 1, 2010 be and hereby is **OVERRULED**.

Dated this 7th day of May, 2010 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
