**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 09-20152-01-KHV |
| JASON E. FRAZIER, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER

On November 18, 2009, the grand jury charged defendant with kidnaping in violation of 18 U.S.C. § 1201(a)(1) (Count 1); use of a firearm in furtherance of a crime of violence and a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 2); knowing and intentional possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) (Count 3); and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e) (Count 4).[1]  See Indictment (Doc. #8) at 1-2.  On July 2, 2010 a jury found defendant guilty on all four counts.  This matter comes before the Court on defendant's Motion For Judgment Of Acquittal Notwithstanding The Jury Verdict, Or, In The Alternative, Motion For New Trial (Doc. #76) filed July 12, 2010.

### Standards For Motions For Judgment Of Acquittal

In considering a motion for judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P., the Court cannot weigh the evidence or consider the credibility of witnesses.  See Burks v. United States, 437 U.S. 1, 16 (1978).  Rather, the Court must view the evidence in the light most favorable

---

[1] The indictment also includes a forfeiture allegation under 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c).

to the government and determine whether the record contains sufficient evidence from which a jury might properly find defendant guilty beyond a reasonable doubt. United States v. Erickson, 561 F.3d 1150, 1158 (10th Cir. 2009). The jury may base its verdict on both direct and circumstantial evidence, together with all reasonable inferences that can be drawn therefrom, viewed in the light most favorable to the government. See id. While the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities other than guilt. Id. 1158-59; see United States v. Burkley, 513 F.3d 1183, 1188 (10th Cir. 2008).

**Standards For Motions For New Trial**

Rule 33, Fed. R. Crim. P., provides that the Court may grant a motion for a new trial "if the interest of justice so requires." A motion for new trial under Rule 33 is not regarded with favor and is granted with great caution. United States v. Herrera, 481 F.3d 1266, 1269-70 (10th Cir. 2007) (citing United States v. Trujillo, 136 F.3d 1388, 1394 (10th Cir. 1998)). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. United States v. Custodio, 141 F.3d 965, 966 (10th Cir. 1998).

**Factual Background**

The following is a brief summary of the evidence presented at trial.

On October 29, 2009, between 3:00 and 4:00 a.m., Samuel Schwer and his daughter, Katrina Schwer, became lost while traveling from a livestock show to a hotel in downtown Kansas City, Missouri. Schwer was driving a pickup truck and Katrina was following in a Ford Taurus. The Schwers live in Wisconsin and were not familiar with the Kansas City area.

The Schwers pulled into a convenience store on Truman Road in Kansas City, Missouri.

Samuel Schwer asked the clerk for directions to the hotel but the clerk could not help. A customer, Jason Frazier, approached Schwer and said that for gas money he would the Schwers to the hotel. The Schwers got into their vehicles and followed Frazier, who was driving an Acura Legend. Frazier drove past the 12th Street exit in Kansas City, Missouri, which the Schwers believed was the correct exit to get to the hotel. Concerned that Frazier was not leading them in the right direction, the Schwers took an exit into Kansas City, Kansas. Frazier took the exit ahead of them. The Schwers then pulled to the side of the road and tried to make u-turns in the roadway. Frazier pulled in behind Katrina and approached her vehicle on foot, carrying a pistol. Frazier leaned into Katrina's open window, grabbed her by the shirt, pushed the gun barrel into her chest and yelled at her to get out of the car. Schwer heard Katrina scream and saw Frazier with the upper half of his body inside the car window. Schwer backed his truck up at a high rate of speed and pushed Frazier up against Katrina's vehicle.[2] Schwer yelled at Katrina to "go," and she sped off, with her father following behind.

After driving on several side streets and believing that they had lost Frazier, the Schwers pulled into a Stop & Go at 701 Central Avenue in Kansas City, Kansas. Schwer was just about to go inside to call police when Frazier sped toward them in the parking lot. Katrina quickly drove off westbound with Frazier following her. Schwer followed them in his truck and saw Frazier's car pull alongside Katrina's car. Frazier pulled his vehicle next to Katrina's and yelled "Get in my car, get in my car." Schwer pulled ahead of Frazier's vehicle in an effort to stop him.[3] Schwer backed his

---

[2] Frazier's black cap fell into Katrina's vehicle, where police later recovered it.

[3] Schwer knew that Frazier had a gun and feared for his daughter's safety.

truck into the front end of Frazier's Acura.[4] He then drove forward. As Schwer drove off, he saw in his rearview mirror that Frazier's vehicle was damaged.

Schwer flagged down KCK Police Officer Clinton Swan and told him what had happened and described the car and driver. Based on his report, Officer Swan, Officer Michael Moulin and Officer Jonathan Westbrook responded and searched the area for a small dark colored vehicle with front-end damage driven by a black male wearing a dark colored jacket. Officer Westbrook located Frazier and the Acura, which had substantial front end damage. Frazier was wearing a dark colored jacket. Officer Westbrook handcuffed Frazier. While standing outside of the Acura, Officer Moulin saw a spent shell casing on the front passenger seat. Schwer arrived and identified Frazier as the individual involved in the incident. While officers were at the location with Frazier, the officers who had responded to assist Katrina provided information from her that was consistent with the information Schwer provided. The officers then arrested Frazier. Shortly after that, Katrina went to the scene and identified Frazier.

Officers determined that the Acura was a traffic hazard because it was somewhat parked in the roadway. Officer Moulin inventoried the vehicle before it was towed from the scene. He found a black bag in the trunk which contained a loaded 9 mm Ruger pistol, Model P89, serial number 313-6913; a box of Federal 9 mm luger 47 grain jacketed hollow point ammunition; a silver 20 round magazine containing 11 luger rounds; a black digital scale; a large freezer bag containing 261.2 grams of marijuana; a sandwich bag containing 3.6 grams of cocaine; a sandwich bag containing 22.8 grams of marijuana and a sandwich bag containing 22.6 grams of "crack" cocaine.

---

[4] Katrina drove to the area of 29th and Parallel, where she called 911. The dispatcher sent police officers from Kansas City, Kansas to that location.

**Analysis**

Defendant asserts that as to all counts (1) the Court erred in impaneling the jury because the venire underrepresented African Americans and (2) the government offered insufficient evidence to support the convictions. As to Count 2, defendant also asserts that the Court erred in instructing the jury and that the Court's response to a jury question permitted the jury to reach a less than unanimous decision.

The government first notes that defendant requested additional time within which to submit suggestions in support of his motion. See Doc. #77 The Court granted the motion and directed defendant to file suggestions by September 13, 2010. See Doc. #83. Defendant ordered a transcript of the trial proceedings, but did not file a memorandum in support of his motion. The government asks the Court to deny the motion because defendant has not filed any authority in support of his position. The Court has reviewed the parties' briefs, the trial transcript and the written motion for judgment of acquittal which defendant filed at the close of the government's case. For reasons set forth below, the Court finds that defendant's motion should be overruled.

**I.     Racial Composition of Jury Pool**

Defendant argues that he is entitled to a new trial because the jury venire from which the jury was selected drastically underrepresented certain demographic groups, specifically African Americans.

The Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq., provides in pertinent part: "It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. The Jury

Act's fair cross section requirement parallels a defendant's Sixth Amendment right to trial by an impartial jury. See United States v. Powell, No. 20021-01-KHV, 2004 WL 1534176, at *6 (D. Kan. May 10, 2004; see Taylor v. Louisiana, 419 U.S. 522, 526-31 (1975) ; United States v. Shinault, 147 F.3d 1266, 1270 (10th Cir. 1998).

To establish a prima facie violation of the Sixth Amendment fair cross-section requirement, defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979). If defendant proves a prima facie violation, the government then bears the burden of proving that attainment of a fair cross section is incompatible with a significant state interest. See id. at 368.

Defendant has no right to a "petit jury composed in whole or in part of persons of his own race." Batson v. Kentucky, 476 U.S. 79, 85 (1986). Moreover, the Sixth Amendment does not require that "petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." Batson, 476 U.S. at 86 n.6.

The system which the Federal District of Kansas uses for selecting petit juries has been the subject of judicial scrutiny, and has been found to satisfy the requirements of the Sixth Amendment in the criminal context. See United States v. Chanthadara, 230 F.3d 1237, 1256-57 (10th Cir. 2000); Shinault, 147 F.3d at 1270-73. Defendant has not shown (1) that the representation of blacks on the juries was unfair or unreasonable in relation to the number of blacks in the community or (2) that blacks were systematically excluded from his venire. The Court therefore overrules defendant's

motion for judgment of acquittal or new trial based on the composition of the venire.

**II.      Sufficiency Of Evidence**

The defendant generally challenges the sufficiency of the evidence as to all counts.

A.      Count 1

Defendant specifically challenges the kidnapping conviction (Count 1), asserting that the government presented no evidence that he took Katrina into his custody or transported her or that he demanded any "ransom, reward, or otherwise."

Count 1 charged defendant under 18 U.S.C. § 1201(a), which provides that "whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . . when – (1) the person is willfully transported in interstate or foreign commerce, . . . or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense, is guilty of kidnapping." The government presented evidence that defendant offered to lead the Schwers from a convenience store to their hotel in Missouri and that instead he lead them into Kansas. Both Katrina and defendant traveled interstate to Kansas, where defendant approached Katrina's vehicle and at gunpoint ordered her to get out of her vehicle and into his. The jury could find that at that point, defendant kidnapped Katrina within the meaning of the statute because she was not free to leave. The evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that defendant kidnapped Katrina.[5]

---

[5]     The Court instructed the jury on the lesser included offense of attempted kidnapping, a charge on which the jury easily could have returned a verdict of guilty. See Instruction No. 13.

B.  Count 2

Defendant asserts that the government presented insufficient evidence as to Count 2, which charged defendant with carrying and using the 9mm Ruger pistol, Model P89, serial number 313-6913, during and in relation to the kidnapping or drug trafficking crime,[6] *or alternatively*, with possessing a firearm in furtherance of a drug trafficking offense, namely, possession with intent to distribute crack cocaine.

Defendant's trunk contained a Ruger pistol and crack cocaine in an amount that was consistent with distribution. Defendant asserts that the government produced insufficient evidence that defendant knowingly possessed the drugs and the Ruger pistol. At trial, defense counsel noted that defendant had recently purchased the car. He argued that it was reasonable to infer that defendant did not intentionally possess the drugs and gun – that perhaps the prior owner had left them in the car without defendant's knowledge. The prior owner testified, however, that when he sold the vehicle, the drugs and pistol were not in the trunk. The evidence supports a finding that defendant used the firearm during and in relation to a drug trafficking offense. See United States v. Basham, 268 F.3d 1199, 1208 (10th Cir. 2001) (firearm kept available for use if needed during drug transaction is "possessed in furtherance of" drug trafficking); United States v. Garner, 338 F.3d 78, 81 (1st Cir. 2003) (gun possessed in furtherance of drug-trafficking crime when guns and drugs found together and defendant convicted of possession with intent to distribute).

---

[6]  As to this charge, the Court instructed the jury as to three theories: (1) using the Ruger pistol during and in relation to the kidnapping or attempted kidnapping; (2) possessing the Ruger pistol in furtherance of the kidnapping or attempted kidnapping; or (3) possessing the Ruger pistol in furtherance of the drug trafficking crime. Further, the Court instructed the jury that in order to return a verdict of guilty it had to unanimously agree upon which of the three theories applied.

Considering all of the evidence in a light most favorable to the government, the record contained sufficient evidence to support a verdict as to each alternative theory.

C.     Counts 3 and 4

As noted above, defendant asserts that the government produced insufficient evidence that defendant knowingly possessed the drugs and the Ruger pistol which officers found in the trunk of his Accura. As noted, the prior owner testified that the drugs and pistol were not in the trunk when he sold the car. Further, the jury heard evidence that the amount of crack cocaine in the trunk was consistent with distribution, that defendant possessed a firearm and that he was a convicted felon. The evidence was clearly sufficient to support a conviction on Counts 3 and 4.

The Court overrules defendant's motion for judgment of acquittal or new trial based on insufficiency of the evidence.

**III.    Jury Instruction And Jury Question**

A.     Count 3 Jury Instruction

Defendant asserts that the Court improperly instructed the jury as to the elements of Count 3, see Jury Instruction No. 15, Doc. #72 at 18-19. Defendant suggests that the Court should have given defendant's proposed jury instruction. As the government points out, the Court incorporated defendant's proposed instruction and the concerns which he raised. See Doc. #67-3. Further, the Tenth Circuit has upheld this instruction. See Basham, 268 F.3d at 1203; United States v. Avery, 295 F.3d 1158, 1180 (10th Cir. 2002). Defendant has not established how the instruction was erroneous or how it misstated the law.

B.     Response To Jury Question

Defendant asserts that the Court provided an improper response to a jury question about question 4 on the verdict form. Question four contained two parts. It first asked the jury whether it found defendant guilty of Count 3. If the jury answered yes (as it did), the second part of question 4 asked the jury whether it found beyond a reasonable doubt "that defendant displayed the Ruger pistol to intimidate Katrina Schwer or Samuel Schwer." As to the second part of question 4, the jury asked the following question:

> We are understanding that all 12 jurors must agree beyond a reasonable doubt for the answer to be YES. Is the same true for the answer to be NO? That is, if some jurors believe YES, and some believe NO, is that an acceptable circumstance to answer NO. Or, do all 12 jurors need to be unanimous for NO?

Doc. #73 at 1. The Court responded as follows:

> If you are not all in agreement to answer "yes," you should answer "no" to Question 4 on the verdict form.

See Doc. #73 at 2. Defendant suggests that the Court's response allowed the jury to reach a less than unanimous decision as to Question 4. The Court's answer, however, appropriately reinforced to the jury that if it did not unanimously find beyond a reasonable doubt that defendant used the Ruger to intimidate Schwer or Katrina, then it should answer the question "no" – which is precisely what the jury did. Therefore, defendant was not prejudiced by the Court's response to the jury question.

**IT IS THEREFORE ORDERED** that defendant's Motion For Judgment Of Acquittal Notwithstanding The Jury Verdict, Or, In The Alternative, Motion For New Trial (Doc. #76) filed July 12, 2010 be and hereby is **OVERRULED**.

Dated this 8th day of October, 2010 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge