## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL ACTION |
| v. | ) | No. 09-20152-01-KHV |
| | ) | |
| JASON E. FRAZIER, | ) | CIVIL ACTION |
| | ) | No. 13-2040-KHV |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

On July 2, 2010, a jury found defendant guilty of kidnapping in violation of 18 U.S.C.

§ 1201(a)(1) (Count 1); using and carrying a firearm in furtherance of a drug trafficking crime in

violation of 18 U.S.C. § 924(c) (Count 2); possession with intent to distribute five or more grams

of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) (Count 3); and being a

felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e)

(Count 4). On October 13, 2010, the Court sentenced defendant to life in prison on Count 1,

60 months on Count 2, 420 months on Count 3 and 180 months on Count 4.  This matter is before

the Court on defendant's <u>Motion to Set Aside, Vacate, or Correct a Sentence By a Person In Federal

Custody 28 U.S.C. § 2255</u> (Doc. #114) filed January 22, 2013.  For reasons stated below, the Court

overrules defendant's motion and denies a certificate of appealability.

### Factual Background

Based on testimony and evidence received at trial, the Court summarizes the relevant facts

as follows:

On October 29, 2009, between 3:00 and 4:00 a.m., Samuel Schwer and his daughter, Katrina

Schwer, became lost while driving from a livestock show at the American Royal to a hotel in

downtown Kansas City, Missouri.  Ms. Schwer drove a Ford Taurus and Mr. Schwer followed Ms.

Schwer in a large pickup truck.  The Schwers live in Wisconsin and were unfamiliar with the Kansas City area.

The Schwers pulled into a convenience store on Truman Road in Kansas City, Missouri.  Ms. Schwer remained in her car while Mr. Schwer went inside and asked the clerk for directions to their hotel.  The clerk could not help him.  A customer, Jason Frazier, approached Mr. Schwer and offered to help the Schwers find their hotel in exchange for gas money.  Mr. Schwer agreed and both he and his daughter followed Frazier, who drove a dark Acura Legend.  As Frazier drove past the 12th Street exit in Kansas City, Missouri, the Schwers believed they had missed their exit and grew concerned that Frazier was not leading them in the right direction.  The Schwers decided to take the next exit in Kansas City, Kansas.  As they were exiting, the Schwers noticed that Frazier quickly took the same exit ahead of them.  The Schwers then pulled over and tried to turn around in the roadway.  Frazier pulled in behind Ms. Schwer and approached her vehicle on foot, carrying a pistol. Frazier leaned into Ms. Schwer's open driver's side window, grabbed her by the shirt, pushed the gun barrel into her chest and yelled at her to get out of the vehicle.  Mr. Schwer heard his daughter scream and saw Frazier leaning the upper half of his body inside Ms. Schwer's car.  Mr. Schwer backed up his truck at a high rate of speed and pushed Frazier up against Ms. Schwer's vehicle.  At that point, Frazier's black cap fell into Ms. Schwer's vehicle, where police later recovered it.  Mr. Schwer yelled at his daughter to "go," and Ms. Schwer sped off.  Mr. Schwer quickly followed and struggled to keep up with Ms. Schwer.

After driving several blocks and believing that they had lost Frazier, the Schwers pulled into a Stop & Go at 701 Central Avenue in Kansas City, Kansas.  Mr. Schwer was about to call police when he saw Frazier speeding toward them in the parking lot.  Ms. Schwer sped off again, heading

- 2 -

westbound on Central, with Frazier following her.  At that point, Mr. Schwer noticed Frazier had a gun at that point, and he feared for his daughter's safety.  He followed Ms. Schwer and Frazier and saw Frazier's car pull alongside Ms. Schwer's car.  Frazier yelled at Ms. Schwer to get into his car. Mr. Schwer sped up and pulled ahead of Frazier's vehicle to prevent Frazier from following Ms. Schwer.  He then backed his truck into the front end of Frazier's car and drove up onto the hood of Frazier's car.  Mr. Schwer's truck became stuck momentarily, but he was able to escape.  As Mr. Schwer drove away, he noticed that Frazier's Acura was damaged.  Mr. Schwer drove until he was able to flag down authorities.  Meanwhile, Ms. Schwer drove until she reached 29th and Parallel, where she called 911.  The dispatcher sent officers to her location.

Mr. Schwer stopped KCK Police Officer Clinton Swan.  He told Officer Swan what had happened and described Frazier and Frazier's car.  Officer Swan, Officer Michael Moulin and Officer Jonathan Westbrook searched the area for a small, dark colored vehicle with front-end damage driven by a black male wearing a dark colored jacket.  Officer Westbrook located Frazier and his Acura, noting that the vehicle had substantial front end damage.  Frazier told Westbrook that he had been involved in an accident. Officer Westbrook noted that Frazier wore a dark colored jacket.  Officer Westbrook then handcuffed Frazier. While standing outside the Acura, Officer Moulin noticed a spent shell casing on the front passenger seat.  Mr. Schwer arrived at the scene and identified Frazier as the individual involved in the incident.  Meanwhile, the officers who had responded to assist Ms. Schwer provided the other officers information from Ms. Schwer about Frazier.  Ms. Schwer's information was consistent with the information that Mr. Schwer provided. At that point, officers gave Frazier <u>Miranda</u> warnings.  Ms. Schwer arrived at the scene and also identified Frazier as the individual involved in the incident.

Officers determined that the Acura was a traffic hazard because it was partially parked in the roadway. Officer Moulin inventoried the vehicle before it was towed from the scene. He located a black bag in the trunk which contained a loaded pistol, a box of ammunition, a gun magazine, a digital scale, two plastic bags containing marijuana, a sandwich bag containing cocaine and a sandwich bag containing "crack" cocaine.

On June 28, 2010, the Court held a five-day jury trial. Phillip R. Gibson represented defendant at trial. Defendant did not testify. The jury found defendant guilty on each count. See Verdict (Doc. #74). On October 13, 2010, the Court sentenced defendant to life in prison on Count 1, 60 months on Count 2, 420 months on Count 3 and 180 months on Count 4. The Court ordered that the sentences on Counts 1, 3 and 4 run concurrently, and that the sentence on Count 2 run consecutively to the other counts. See Judgment In A Criminal Case (Doc. #93).

## Analysis

In his motion to vacate, defendant claims that trial counsel provided ineffective assistance because he did not request certain jury instructions and did not allow defendant to testify at trial. To establish ineffective assistance of counsel, defendant must show (1) that the performance of counsel was deficient and (2) a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness." United States v. Challoner, 583 F.3d 745, 749 (10th Cir. 2009) (quoting Strickland, 466 U.S. at 688, 694).

- 4 -

The Supreme Court recognizes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988).  The Court must not second-guess counsel's assistance with the benefit of hindsight simply because defendant was convicted and sentenced to a lengthy prison term.  See Strickland, 466 U.S. at 689.

To satisfy the second prong of Strickland, defendant must show a reasonable probability that but for counsel's errors, the jury would have reached a different verdict.  A reasonable probability is one sufficient to undermine one's confidence in the outcome.  See id. at 694.  To determine whether counsel's errors prejudiced defendant, the Court considers the totality of the evidence before the jury.  See id. at 695.

## I.    Jury Instructions

Defendant argues that trial counsel was ineffective because he did not request (1) a unanimity of theory instruction on the kidnapping charge, and (2) a limiting instruction for the term "inveigling" as it pertained to Mr. Schwer.[1]  Defendant's Memorandum in Support of Motion to

---

[1]    The kidnapping jury instruction appears as Instruction No. 12:

To prove that defendant is guilty of kidnapping, as charged in Count 1, the government must prove beyond a reasonable doubt each of the following elements:

1.    Defendant kidnapped Katrina Schwer;
2.    Defendant kidnapped Katrina Schwer for a purpose that was of some benefit to him, whether for reward, ransom or otherwise;
3.    Defendant did so willfully; and
4.    Defendant willfully caused the transportation of Katrina Schwer in interstate commerce.

To kidnap a person means to unlawfully hold, keep, detain or confine the person against that person's will.  It includes inveigling, which means luring, enticing or leading the person astray by false representations or promises or other

(continued...)

Vacate, Set Aside, or Correct Judgment and Sentence Under 28 U.S.C. §2255 ("Defendant's Memorandum") (Doc. #115) at 2-7.

> A.      Counsel's Failure To Request A Specific Unanimity Instruction

Defendant argues that counsel provided ineffective assistance when he failed to request a specific unanimity instruction on the kidnapping charge. Id. at 2. Defendant argues that the Court should have instructed the jurors that they had to unanimously agree upon which action or sub-element constituted kidnapping, i.e. whether Ms. Schwer was seized, confined or inveigled.[2]

---

[1](...continued)
deceitful means. The victim's detention must be involuntary or coerced.

> The term "willfully" means that defendant acted voluntarily and with the intent to violate the law.

> Interstate commerce means commerce or travel between one state and another state. A person is transported in interstate commerce whenever that person moves across state lines from one state into another. The government, however, does not have to prove that the defendant knew that state lines were crossed. So long as defendant crossed a state line while intentionally causing transportation of the victim, the third element is satisfied.

> The jury need not unanimously agree on why defendant may have kidnapped Katrina Schwer, so long as you each find that defendant had some purpose or derived some benefit from the kidnapping.

Instructions To The Jury (Doc. #72) at 14.

[2]      Defendant claims the jury was confused about the meaning of unanimity. Id. at 5. Defendant argues that jury confusion surrounding unanimity was clear because of a question the jury posed to the Court during deliberations. The question stated:

> On Verdict page 2, number 4 there is a question:

> "If your answer is 'guilty,' do you find beyond a reasonable doubt that defendant displayed the Ruger pistol to intimidate Katrina Schwer or Samuel Schwer?"

(continued...)

Id. at 4.

Defendant relies primarily on United States v. Richardson, 526 U.S. 813 (1999), which held that to convict defendant of a continuing criminal enterprise, a jury must unanimously agree both that defendant committed a "continuing series of violations" and what specific violations make up that series. Richardson, 526 U.S. at 813. The Tenth Circuit, however, has distinguished Richardson in the kidnapping context. See United States v. Powell, 226 F.3d 1181 (10th Cir. 2000). In Powell, on direct appeal, defendant argued that the trial court erred when it failed to provide a specific unanimity instruction which required the jury to agree how the victim was kidnapped, i.e. whether the victim was seized, confined, inveigled, kidnapped, abducted, etc. Id. at 1185, 1194-95. The Tenth Circuit found no reversible error because the jury was only required to agree on the element of kidnapping, not the particular means used by defendant – i.e. seizing, confining, inveigling, etc. Id. at 1195.[3]

---

[2](...continued)
We are understanding that all 12 jurors must agree beyond a reasonable doubt for the answer to be yes. Is the same true for the answer to be no? That is, if some jurors believe yes, and some believe no, is that an acceptable circumstance to answer no? Or, do all 12 jurors need to be unanimous for no?

Jury Question (Doc. #73). The jury question related to unanimity was in the context of the additional finding of displaying or brandishing a firearm, which is not an element of the offense. Accordingly, the Court finds that the question did not reflect any jury confusion as to unanimity in the context of the various elements of an offense including the kidnapping charge in Count 1.

[3]     In Richardson, the Supreme Court noted that a jury need not unanimously decide which means defendant used to commit an element of an offense. Id. The Supreme Court noted as follows:

Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude that he used a gun. But that disagreement – a disagreement about means

(continued...)

In light of <u>Powell</u>, counsel's failure to request a specific unanimity instruction for Count 1 was not deficient or prejudicial.  <u>Powell</u>, 226 F.3d at 1194-95; <u>see also</u> <u>United States v. Phillips</u>, 869 F.2d 1361, 1368 (10th Cir. 1988) (rejecting argument that conviction should be reversed solely based on juror disagreement as to certain underlying facts).  The "sub-elements," as defendant defines them, are actually "means" of committing the first element of a kidnapping offense.  Thus, the jury was not required to unanimously find whether Ms. Schwer was seized, confined <u>or</u> inveigled.  Rather, the jury was only required to agree that she <u>was</u> kidnapped, whether by seizing, confining or inveigling.  The Court therefore overrules defendant's claim that counsel provided ineffective assistance when he failed to request a specific unanimity instruction on the kidnapping charge.[4]

B.   <u>Counsel's Failure To Request A Limiting Instruction On The Term Inveigling</u>

Defendant alleges that trial counsel provided ineffective assistance because he did not request a limiting instruction as to Mr. Schwer on the term "inveigling."  <u>Defendant's Memorandum</u> (Doc. #115) at 6.  Defendant argues that if some jurors believed that Ms. Schwer was inveigled, then

---

[3](...continued)
– would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force.

<u>Id.</u> at 817.

[4]    Defendant urges the Court to follow other circuits which have held that in complex cases, a specific unanimity instruction may be required to avoid jury confusion, <u>see</u> <u>United States v. Ryan</u>, 828 F.2d 1010 (3d Cir. 1987) (specific unanimity instructions necessary in complex cases); <u>United States v. Payseno</u>, 782 F.2d 832 (9th Cir. 1986) (general unanimity instructions do not suffice where genuine possibility of jury confusion).  In <u>Powell</u>, the Tenth Circuit specifically declined to adopt the rationale of these cases.  <u>See</u> <u>Powell</u>, 226 F.3d at 1195 n.7.

the jury verdict would have been incorrect because "only Mr. Schwer could have been inveigled." Id. at 7.

Counsel's failure to request a limiting instruction was not deficient, however, or prejudicial. The Indictment alleges that Ms. Schwer was the only victim under Count 1. See Indictment (Doc. #8) at 1. Accordingly, the Court would have rejected any instruction attempting to clarify the sub-elements of Count 1 as to Mr. Schwer. During the trial, the government neither argued nor implied that Mr. Schwer was a victim under Count 1. Instruction No. 12 made it clear that only Ms. Schwer could have been kidnapped. See supra note 2. Accordingly, counsel's decision not to seek a limiting instruction on the term inveigling was not deficient or prejudicial.

**II.      Counsel's Failure To Allow Defendant To Testify**

Defendant argues that counsel was ineffective because he did not allow defendant to testify at trial. To satisfy the first prong of Strickland, defendant must show that counsel prevented him from testifying at trial. A criminal defendant has a constitutional right to testify at trial on his own behalf. See Rock v. Arkansas, 483 U.S. 44, 49-52 (1987). The decision to testify lies squarely with the defendant and not counsel. Cannon v. Mullin, 383 F.3d 1152, 1171 (10th Cir. 2004). Counsel should inform defendant that he has the right to testify and that the decision belongs solely to him. Id. Counsel should also discuss the strategic implications of choosing whether to testify and make a recommendation to defendant. Id. Counsel lacks authority to prevent defendant from testifying, however, even if it would be detrimental to counsel's trial strategy to do so. Id. If trial counsel ignores or overrides a defendant's desire to testify, counsel has performed deficiently. See United States v. Williams, 139 F. App'x 974, 977 (10th Cir. 2005) (citing United States v. Teague, 953 F.2d 1525, 1534 (11th Cir. 1992)).

Defendant asserts that he wished to testify at trial, but was "overruled by trial counsel for strategic reasons." Defendant's Memorandum (Doc. #115) at 7. Defendant makes only a bare assertion without evidentiary support. At trial, defendant raised no issue when he was not called as a witness or at any other point throughout the proceeding. See Jury Trial Transcript Vol. 3 (Doc. #102) at 198-205; cf. United States v. Janoe, 720 F.2d 1156, 1161 n.9 (10th Cir. 1983) (right to testify not denied where among other things, defendant did not object to attorney statements that defendant would not testify and made no request to testify). Defendant has not alleged specific facts about his discussion with counsel to establish that counsel overruled his desire to testify. Accordingly, he cannot establish that counsel's performance was deficient in this regard.

To show prejudice under the second prong of Strickland, defendant must show a reasonable probability that the outcome of the proceeding would have been different had he testified at trial. As with other proposed witnesses, to establish prejudice, defendant must provide an affidavit or at least some specific statement as to the nature of his proposed testimony. See Hines v. United States, 282 F.3d 1002, 1004-05 (8th Cir. 2002) (counsel not ineffective for failing to call defendant to testify because defendant did not indicate nature of testimony, thus failing to show how outcome would have been different); cf. United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (to show ineffective assistance, evidence about testimony of putative witness must generally be presented by witness testimony or affidavit); Sanders v. Trickey, 875 F.2d 205, 210-11 (8th Cir. 1989) (failure to provide affidavit from witness regarding potential testimony precludes finding of prejudice); United States v. Jones, 124 F.3d 218 (Table), 1997 WL 580493, at *1 (10th Cir. Sept. 19, 1997) (certificate of appealability on ineffective assistance claim denied because defendant did not present specific facts to show that co-defendant would have offered exculpatory evidence).

Defendant has not alleged sufficient facts to establish a reasonable probability that the jury would have reached a different verdict had he testified.  In light of defendant's criminal history and the testimony of other witnesses, defendant has not alleged sufficient facts to establish that counsel's alleged failure to allow defendant to testify changed the result.  Accordingly, counsel's alleged error was not prejudicial.  See Strickland, 466 U.S. at 694.  The Court therefore overrules defendant's claim that counsel provided ineffective assistance by not allowing him to testify.

### Conclusion

The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which, if true, would entitle him to relief.  Accordingly, no evidentiary hearing is required.  See 28 U.S.C. § 2255; United States v. Cervini, 379 F.3d 987, 994 (10th Cir. 2004) (standard for evidentiary hearing higher than notice pleading); United States v. Kilpatrick, 124 F.3d 218 (Table), 1997 WL 537866, at *3 (10th Cir. 1997) (conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where court may resolve factual matters raised by Section 2255 petition on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations not contravened by record).

### Certificate Of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a

constitutional right.  28 U.S.C. § 2253(c)(2).[5]  To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)).  For reasons stated above, the Court finds that defendant has not satisfied this standard.  The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

**IT IS THEREFORE ORDERED** that defendant's Motion to Set Aside, Vacate, or Correct a Sentence By a Person In Federal Custody 28 U.S.C. § 2255 (Doc. #114) filed January 22, 2013 be and hereby is **OVERRULED**.  A certificate of appealability as to the ruling on defendant's Section 2255 motion is **DENIED**.

Dated this 19th day of July, 2015 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[5]        The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability.  See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).